### EZEKIEL BOOLE,

*vs.*

### HENRY B. JOHNSON.

### *Sussex, Oct.* 15, 1917.

Injunction lies to enjoin an action of ejectment, the defense to which is an equitable title, arising from an agreement of tenant's in common to divide, containing no words of conveyance.

BILL TO ENJOIN AN ACTION OF EJECTMENT. Heard on bill, answer, depositions of witnesses and exhibits. The facts appear in the opinion of the Chancellor.

*Robert C. White* and *James M. Tunnell*, for the complainant.

*Robert G. Houston*, for the defendant.

THE CHANCELLOR. The bill seeks to enjoin an action of ejectment brought to recover possession of land. Jacob H. Brasure and Lambert T. Lynch in 1906 executed a written agreement under seal to divide a tract of land called "Cows Quarter," designating by descriptions sufficient for identifica-

tion the portions each should have, but containing no words of conveyance. After the death of Brasure in 1901 his heirs at law conveyed all their interest in the whole tract, "Cows Quarter," to David P. Bishop, who conveyed the same to the defendant, Henry B. Johnson. An action of ejectment has been brought by Johnson against the complainant, Ezekiel Boole, who is tenant in possession under the heirs at law of Lambert T. Lynch, deceased.

In brief, the lessee of a parcel of land to which the ancestor of the lessors became entitled under a written agreement made with a co-tenant to divide a larger tract, which included the land in question in the ejectment suit, seeks to permanently enjoin an ejectment suit brought by one who claims title under the heirs of such co-tenant. Inasmuch as the lessors of Boole are heirs at law of Lynch, a party to the partition agreement, and so are in privity with him, and Boole is protecting their interests; and inasmuch as Johnson claims to have the title of Brasure, also a party to the partition agreement, and according to the allegations of the bill took title with knowledge of the claims of Boole's lessors; therefore for the purpose of considering the question of jurisdiction it may be treated as though the present contest were between the original parties to the partition agreement. Therefore, more briefly stated, the question is whether a Court of Chancery has power to enjoin an action of ejectment brought by one tenant in common to recover possession of land which is in the possession of the other tenant in common and held in severalty under a written agreement between the two tenants in common to divide a tract of land.

The question of jurisdiction was not raised *in limine*, by demurrer, or otherwise, as it might and should have been, and is raised at the final hearing after a large quantity of testimony has been taken as to the legal title and possession. But as the question has been raised, it will be disposed of first.

In the agreement to divide a tract of land between the tenants in common no words of conveyance were used. The agreement though in writing and sufficient to satisfy the Statute of Frauds, is little more than a parol agreement. Probably

it does not effect a transfer of the legal title. This was the view expressed by the court in the case of *Burton v. Morris*, 3 *Har.* 269, as to an agreement between tenants in common of certain ground rents (which is a species of real estate), to divide and hold them in severalty, the leases to be held by each being designated. One of the parties afterwards sought to collect in his own name rent due under one of the leases which he had taken, but the court tentatively expressed an opinion that there was only an agreement to convey which did not in fact sever the tenancy in common. In the report of the case it was stated that a verdict was entered for the plaintiff in accordance with that view subject to the opinion which the court might have on the question if it should be argued afterwards. "But," says the reporter significantly, "the defendant did not again stir the matter."

Chancellor Bates in *Matthews v. Dodd*, 3 *Del. Ch.* 159, refused to enjoin an action at law because the defense was a legal one and the Court of Chancery did not have legal means to help the defendant to make the defense. But the Chancellor said that equity could rightly interfere with an action at law where in an ejectment suit an equitable title is set up as a defense against the holder of the legal title. The complainant rightly regards this as a direct authority to support the jurisdiction of the court in this case. He is a lessee under those who have no deed and whose right to the land is an equitable one based on the agreement between tenants in common to divide land, while the plaintiff in the ejectment suit holds the paper title from the heirs of one of the tenants in common. This court will protect the equitable title which may not be available to the equitable owner in a court of law.

Of course a Court of Chancery does not take jurisdiction where there is a full, adequate and complete remedy at law, whether its aid is sought to help an attack or to assist a defense. The court also deals with title to land with caution. But in a clear case it decides as to rights to real estate as well as other property, and without doubt has the right to protect a defendant in an ejectment action at law whose title is equitable against the plaintiff in that action, whose claim is a legal one,

if the equitable title is a meritorious defense not available as such in the action at law.

It is probably not necessary to go beyond the decision of Chancellor Bates as to the effect of a written agreement to divide land, nor to decide that the parties to it took more than an equitable title to the portions of land which were to be held by each in severalty. Such, however, seems to be the law. *Washburn on Real Property*, *p.* 685; 30 *Cyc.* 160-162, where there is a collection of authorities on the subject. If the question had been raised *in limine* a more extended consideration of it would have been made. A Court of Chancery has power to protect an equitable title, and in a proper case enforce specific performance of an agreement respecting it, and even enforce a conveyance of the legal title. Inasmuch, then, as by the partition agreement Lynch acquired at least an equitable interest in the portion of the land allotted to him, and now in the possession of Boole as tenant for the heirs at law of Lynch, this court has power to and will protect that title if it be right to do so under the facts.

On the merits the complainant is entitled to the relief sought, viz: a decree perpetually enjoining the further prosecution by Johnson, the defendant, of his action of ejectment against the complainant. One defense set up was that there was in fact no tenancy in common between Brasure and Lynch, the parties to the agreement for partition. But this was not sustained by the evidence, for in addition to other evidence a deed was produced showing that the heirs of one Captain James Bishop had prior to the making of the agreement conveyed the land to Lynch. But independent of this the agreement to divide assumes co-tenancy between the parties to the land divided. There is no merit in that defense.

Another defense was that the defendant, Johnson, was a purchaser for value without notice of the partition agreement. It was recorded June 26, 1908. Johnson claimed title by deed from David P. Bishop dated August 25, 1910, and David P. Bishop claimed title by deed from the heirs at law of Jacob H. Brasure dated March 25, 1908, after the agreement was made but before it was recorded. It appears from the evidence clear

that David P. Bishop had notice of the claim of Lynch to title to an interest in the land. He was in fact dispossessed of the land by legal proceedings brought by Lynch. The deed for the land from the heirs of Captain James Bishop to Lynch was of record since March 22, 1902. There were also other facts showing knowledge by David P. Bishop of the rights or claim of Lynch in the premises, and he was not a purchaser without notice of an unrecorded claim. Neither was Johnson the grantee of David P. Bishop. When Johnson took his deed in 1910 the partition agreement was of record, as also was the deed to Lynch. Besides, there was ample evidence to show his knowledge of the claim of Lynch to title to the property. At least, he had knowledge of the disputes and claims respecting the land to put him upon inquiry by an examination of the records, and yet he made no such examination. By the evidence the defendant, Johnson, is charged with notice, or at least with more than a mere want of caution. The notice he had was more than such as would excite the suspicion of a cautious and wary purchaser. The circumstances were such as can be supposed to have left on the mind of the purchaser no reasonable doubt as to the existence of the prior rights. Even the tests of the sufficiency of notice laid down by Chancellor Bates in *Hall v. Livingston, 3 Del. Ch.* 348 (where it was sought to charge a purchaser with notice of a parol trust not set out in a recorded deed), are satisfied in this case. But in the case now under consideration there was not only constructive notice of the recorded agreement, but also possession and facts showing actual notice. Johnson, the defendant, was not at the time of the conveyance to him a purchaser without notice of the prior rights of Lynch and his heirs at law, the lessors of the complainant.

Another defense was that Brasure, one of the parties to the partition agreement, was not mentally competent to make the agreement, but there was no evidence of importance to sustain the point.

The complainant is entitled to a decree for a permanent injunction against a further prosecution of the action of ejectment, and all the costs will be put on the defendant.

Let a decree be entered accordingly.

Note. On appeal the decree of the Chancellor was affirmed by the Supreme Court without opinion.