STEFANIE SMULSKI, d. b. a., *v.* H. FEINBERG FURNITURE CO., a corporation of the State of Delaware, p. b. r.

(*June* 10, 1937.)

HARRINGTON, RICHARDS and SPEAKMAN, J. J., sitting.

*Walter J. Willis* for Stefanie Smulski, the defendant below, appellant.

*William H. Bennethum* (of Marvel, Morford, Ward and Logan) for H. Feinberg Furniture Co., the plaintiff below, respondent.

Superior Court for New Castle County. Appeal from a Justice of the Peace, No. 45, May Term, 1936.

HARRINGTON, J., delivering the opinion of the Court:

This case originated in an action before a Justice of the Peace. In that action the H. Feinberg Furniture Co., a corporation of this State, was the plaintiff, and Stefanie Smulski, the defendant. The Justice entered judgment for the plaintiff. The defendant, Stefanie Smulski, appealed from that judgment and the appeal was duly entered in this court. In that appeal the H. Feinberg Furniture Co., the plaintiff below, was the respondent, and in accordance with the statute (*Rev. Code* 1935, § 4523) and the usual practice a summons sur appeal was issued to the Sheriff of the County for service on that corporation. That summons was in the usual form and referred to the judgment entered by the Justice against Stefanie Smulski, her appeal from that judgment, and directed the H. Feinberg Furniture Co. to appear and answer the appeal. See *Woolley's Del. Pract.*, § 1424.

The return of the Sheriff, which composes a part of the judgment record, shows that the summons in the appellate proceeding was served on the H. Feinberg Furniture Co., a corporation of this State, on April 8th, 1936, by personal service on William Feinberg, the Secretary and Treasurer of the respondent corporation, and by leaving a copy of that summons with him, the president, or head officer of that corporation, residing out of the State of Delaware. Such a service complied with the requirements of the statute relating to service of process on corporations. *Rev. Code* 1935, § 2080.

As we have already pointed out, the H. Feinberg Furniture Co., though the respondent in this court, was the plaintiff in the judgment entered by the Justice of the Peace, and, so far as the record shows, it was, therefore, not only its duty to appear in this court in response to the summons served on it (*Woolley's Del. Pract.*, § 1428) ; but it was, also, its duty to file a *pro-narr* at the May Term, 1936, to which term the alias writ served on it was returnable. *Woolley's Del. Pract.*, §§ 1428, 1438. That corporation failed to comply with its duty in this respect, and at the September Term, 1936, pursuant to the application of the appellant, judgment was entered against it for its failure to file a *pro-narr*. See *Woolley's Del. Pract.*, § 1428.

Whatever the very early rule in England may have been (*Freeman on Judgments*, § 198; *Cannan v. Reynolds*, 5 *El. & Bl.* 301), in most cases, under the later common law rule, a court at law had no control over its own judgments after the adjournment of the term at which they were entered. By reason of that rule, the law courts could not usually amend, modify or even vacate their own judgments for alleged material defects not appearing on the face of the record, unless the motion to that effect was made at the term at which the judgment attacked was entered; and that general rule has been adopted in this State. *Tweed v.*

*Lockton,* 5 *W. W. Harr.* (35 *Del.*) 474, 167 *A.* 703; *Miles v. Layton,* 8 *W. W. Harr.* (38 *Del.*) 411, 193 *A.* 567; *Freeman on Judgments,* §§ 140, 141, 196; see, also, *Stidham v. Thatcher,* 2 *Penn.* 567, 47 *A.* 1005; *Woolley v. Corbit,* 3 *Penn.* 501, 51 *A.* 601. There were, however, some exceptions to that rule. That was true in some cases of amendments of clerical or formal errors made by the clerks. *Freeman on Judgments,* § 145, etc.; *Tweed v. Lockton,* 5 *W. W. Harr.* (35 *Del.*) 474, 479, 167 *A.* 703, 705, *note.*

In England, it seems that such corrections could only be made when the facts on which they were based were shown by some part of the record (*Freeman on Judgments,* § 145, citing *Bacon's Abridgement, Amendments, F; Chessun v. Gordon* (1901), 1 *K. B.* 694), but a more liberal rule is usually applied in this country and seems to be applied in this State. *Freeman on Judgments,* §§ 165, 165 a; see, also, *Walker v. Walker,* 3 *Harr.* 502.

The exceptions to the old general rule, as to the finality of a judgment after the adjournment of the term at which it was entered, also, applied in some other cases of material defects in the judgment, not of a formal or clerical·nature, and not apparent on the record.

In most of those cases, the defects relied on could be taken advantage of under the old common law *writ of coram nobis* or *coram vobis,* as it was called in some cases, though that writ was issued at some term subsequent to the entry of the judgment. *Tweed v. Lockton,* 5 *W. W. Harr.* (35 *Del.*) 474, 479, 167 *A.* 703, 705, *note.*

That writ was a species of *writ of error,* though of a somewhat peculiar nature. Under it, in appropriate cases a judgment could be set aside by the court that entered it for material errors of fact, but not of law affecting its validity, and unknown to the court when it was entered. *Tweed v. Lockton,* 5 *W. W. Harr.* (35 *Del.*) 474, 479, 167 *A.* 703, 705, *note;* 2 *Tidd's Pract.* 1191; 85 *Eng. Rep.* 776, 777, *note.*

In most cases that was apparently true when there were material errors of fact "in the process or through the default of the clerks" (2 *Tidd's Pract.* 1191; *Tweed v. Lockton,* 5 *W. W. Harr.* (35 *Del.*) 474, 479, 167 *A.* 703, 705, *note; Phillips v. Russell,* 19 *Fed. Cas. No.* 11,105a; *Bronson v. Schulten,* 104 *U. S.* 410, 26 *L. Ed.* 797) ; and such errors in the process included material errors of fact in the execution of it. 85 *Eng. Rep.* 776, 777, *note;* see, also, *Phillips v. Russell,* 19 *Fed. Cas.* 11,105a.

As was pointed out in the note to *Tweed v. Lockton,* 5 *W. W. Harr.* (35 *Del.*) 474, 479, 167 *A.* 703, 705, *note, supra,* at common law mere formal or clerical errors could not only be corrected in some cases, but a judgment could ordinarily be reversed at any time after its entry under the *writ of coram nobis* when the defendants in the action, "though under age, appeared by attorney, or when the plaintiff or defendant was a married woman when suit was brought, or when the plaintiff or the defendant had died before verdict, or before the entry of an interlocutory judgment, in the case." See, also, *U. S. v. Mayer,* 235 *U. S.* 55, 35 *S. Ct.* 16, 59 *L. Ed.* 129; *Bronson v. Schulten,* 104 *U. S.* 410, 26 *L. Ed.* 797.

Serjeant Williams in his note to 2 *Saunders* 101, 85 *Eng. Rep.* 776, said:

"Error may be brought in the same court where the judgment was given when the error is not assigned for any fault in the court but for some defect in the execution of the process, or through the fault of the clerks."

In the same note he, also, adds:

"But if the error be in the judgment itself and not in the process a writ of error does not lie in the same court."

The old *writ of coram nobis* is now almost obsolete in both England and America and has been practically superseded in both countries by the more simple method of petition and rule issued thereon. *Tweed v. Lockton,* 5 *W. W.*

*Harr.* (35 *Del.*) 474, 479, 167 *A.* 703, 705, *note; U. S. v. Mayer,* 235 *U. S.* 55, 35 *S. Ct.* 16, 59 *L. Ed.* 129.

But independent of statute, the general principles formerly applied at common law have had their influence on the rights of the parties when the validity of a judgment is directly attacked on petition and rule for some material error of fact, not apparent on the record.

Apparently applying these general principles, the court set aside or corrected errors in judgments on petitions filed at terms of court subsequent to the date of entry in *Walker v. Walker,* 3 *Harr.* 502; *Waples v. Hastings,* 3 *Harr.* 403; *Carnahan v. Allderdice,* 4 *Harr.* 99; *Karcher v. Green,* 8 *Houst.* 163, 32 *A.* 225; *Hukill v. Fennemore,* 4 *Houst.* 581, 584, and *Guyer's Adm'r v. Guyer,* 6 *Houst.* 430.

All of these cases involved material errors of fact, not apparent on the face of the record, and it would seem to be difficult to explain them on any other ground. This difficulty is recognized in *Chandler v. Miles,* 8 *W. W. Harr.* (38 *Del.*) 431, 193 *A.* 576.

*Walker v. Walker* involved the correction of a mere clerical error in the calculations made by the clerk in ascertaining the amount due on a judgment.

*Waples v. Hastings, Carnahan v. Allerdice* and *Karcher v. Green* involved judgment by confession entered on the bonds and warrants of attorney of infants.[1]

*Hukill v. Fennemore* involved a judgment entered on the bond and warrant of attorney of a deceased person at a later term than the term following his death, and *Guyer's Adm'r v. Guyer* involved a judgment entered on the bond and warrant of attorney of a person who was then dead.

[1]But see *King v. Cordrey,* 6 *W. W. Harr.* (36 *Del.*) 418, 177 *A.* 303.

Independent of statute, at a glance it might seem that certain other exceptions to the old general rule, relating to the finality of judgments that did not exist at common law under the *writ of coram nobis,* are, also, recognized and applied by the Superior Court in this State; but courts of law have equitable powers over their own judgments in certain plain cases, and from an analysis of the reported decisions it seems clear that they are based on the application of these principles. See *Hazzard v. Alexander,* 6 *W. W. Harr.* (36 *Del.*) 512, 178 *A.* 873; *Tweed v. Lockton,* 5 *W. W. Harr.* (35 *Del.*) 474, 478, 167 *A.* 703, 704, *note; Commercial Realty, Inc., v. Jackson,* 5 *W. W. Harr.* (35 *Del.*) 395, 166 *A.* 657; *Plunkett v. Dillon,* 3 *Del. Ch.* 496, 509; *Staats v. Herbert,* 4 *Del. Ch.* 508; *Conner v. Pennington,* 1 *Del. Ch.* 177; see, also, *Industrial Trust Co. v. Miller,* 5 *W. W. Harr.* (35 *Del.*) 554, 170 *A.* 923.

■ Applying these principles, though the petition is filed, at some term subsequent to the entry of the judgment, a court of law will frequently take the necessary steps to ascertain the amount due on one of its judgments. *Tweed v. Lockton,* 5 *W. W. Harr.* (35 *Del.*) 474, 478, 167 *A.* 703, 704, *note; White v. Osserman,* 16 *Del. Ch.* 39, 139 *A.* 761; *In re Vandenburg,* 1 *W. W. Harr.* (31 *Del.*) 192, 112 *A.* 830.

In *Miles v. Layton,* 8 *W. W. Harr.* (38 *Del.*) 411, 193 *A.* 567, the Supreme Court, in considering the validity of certain judgments entered on bonds, containing warrants of attorney, for the confession of judgment, and which were attacked at some subsequent term on the ground of forgery, said:

"In New Jersey allegations of fraud in the obtaining of the obligation are, or were, determinable in an issue framed on an application to open a judgment (*Barrow v. Bispham,* 11 *N. J. Law* 110), while in Delaware the Law Courts have preferred that questions of fraud should be determined in the more comprehensive jurisdiction of a court of equity (*State, Use of Duncan, v. Richardson,* 1 *Marv.* 372, 41 *A.* 75; *Townsend v. Townsend,* 5 *Harr.* 20.)"

See, also, *Plunkett v. Dillon,* 3 *Del. Ch.* 496, 509.

The same rule was, also, applied by the Superior Court on a petition to vacate a judgment entered on the bond and warrant of attorney of an alleged insane person. *Industrial Trust Co. v. Miller,* 5 *W. W. Harr.* (35 *Del.*) 554, 170 *A.* 923.

It seems that there have been cases, however, where judgments entered on bonds and warrants of attorney have been attacked in the Superior Court on petitions to open them, and rules issued, on the ground that the execution of such bonds was procured by fraudulent representations. *Green v. Maloney,* 7 *Houst.* 22, 30 *A.* 672; see, also, *Sharpless-Hendler Ice Cream Co. v. Davis,* 17 *Del. Ch.* 321, 155 *A.* 247; *Testardo v. Bresser,* 17 *Del. Ch.* 312, 153 *A.* 800.

A court of equity will ordinarily vacate a judgment entered on a forged bond and warrant of attorney (*Hollis, Adm'r, v. Kinney,* 13 *Del. Ch.* 366, 120 *A.* 356), but there are cases where the machinery of the Superior Court is deemed to be adequate to justify it in granting relief on that ground on petition filed and rule issued. *State, Use of Duncan, v. Richardson,* 1 *Marv.* 372, 41 *A.* 75; *City Loan System, Inc., v. Nordquist et al.,* 5 *W. W. Harr.* (35 *Del.*) 371, 165 *A.* 341; *Chandler v. Miles,* 8 *W. W. Harr.* (38 *Del.*) 431, 193 *A.* 576.

Applying equitable principles, the Superior Court, on the application of the plaintiff, has, also, vacated judgments by default in plain cases of mistake, as to the procedure that should have been adopted by him, to make his judgment a lien on land because the suit was against the administrator of a deceased person. *Garden v. Derickson, Adm'r,* 3 *Houst.* 342.

The same principle was, also, applied in *Pennington v. France,* 2 *Houst.* 417, and by the Federal Court in this district in *Brown v. Philadelphia, W. & B. R. Co.* (*C. C.*), 9 *F.*

183. In *Pennington v. France,* a judgment entered for failure to plead was stricken from the record on reasonable excuse being shown. The same thing was done in *Brown v. Philadelphia, W. & B. R. Co.,* though for some reason, not disclosed by the case, the defendant's attorney had failed to enter an appearance and a judgment by default had been entered on that ground.

But in considering when a court of law will vacate a judgment, because of some material error of fact, not apparent on the face of the record, other principles that are sometimes controlling must not be lost sight of.

In *Watson on Sheriffs* (7 *Law Libr.* 72) the author says:

"Credence is given to the return of the Sheriff; so much so that there can be no averment against the Sheriff's return in the same action; although a party in any court action, or in any action against the Sheriff, may show that such return is false." See, also, *Ridgeway v. Bank,* 11 *Humph.* (*Tenn.*) 523; *Chapman v. Insurance Co.,* 292 *Ill.* 179, 126 *N. E.* 732; *Hargadine v. Ford,* 5 *Houst.* 380.

Because of that rule, in a court of law, even under the old *writ of coram nobis,* the defendant in a judgment could not ordinarily contradict the return of the sheriff showing the service of process on him; his remedy was an action against the sheriff for a false return. *Ridgeway v. Bank,* 11 *Humph.* (*Tenn.*) 523; see, also, *Chapman v. Insurance Co.* 292 *Ill.* 179, 126 *N. E.* 732.

There might be cases where that would seem to be an inadequate remedy, but that rule has been adopted in this State; and, independent of statute, under it, in most cases in the Superior Court, the defendant in a default judgment can not show at some subsequent term that, notwithstanding the return of the sheriff showing service of process on him, he, in fact, had no notice of the proceeding.

*Stidham v. Thatcher,* 2 *Penn.* 567, 47 *A.* 1005; *Woolley v. Corbit,* 3 *Penn.* 501, 51 *A.* 601. Nor is there anything in the language of the court, with respect to default judgments, in *Chandler v. Miles,* 8 *W. W. Harr.* (38 *Del.*) 431, 193 *A.* 576, in commenting on *Brown v. Philadelphia W. & B. R. Co.* (*C. C.*), 9 *F.* 183, and the letter signed by the Judges, then comprising this court, that is inconsistent with this conclusion.

The petition filed does not charge that the alleged false return was induced by fraud on the part of the appellant. See *Freeman on Judgments,* § 228.

■ Whatever the rule may be in some states (*Freeman on Judgments,* § 1229; *Pomeroy's Eq. Juris* [*4th Ed.*], § 2085), under the rule now applied in this State the judgment, therefore, would not even be vacated by the Court of Chancery. *Emerson v. Gray* (*Del. Ch.*), 63 *A.* 768 (not officially reported in State report). That being true, even independent of its own decisions, this court certainly could not be expected to apply a more liberal rule.

The harshness of the old common law rule has been somewhat modified by *Section* 4580 of the *Revised Code* of 1935, but that statutory provision does not apply in this case. It provides:

"If the defendant in a writ of summons, shall not appear at the return day thereof, and it shall appear by the return that he was duly summoned, it shall be lawful for the plaintiff, having filed his declaration, to take judgment thereon for default of appearance, according to the rules and practice of the Court.

"But if the defendant shall, at or before the next term after such judgment, by affidavit deny notice, or knowledge of such suit before the judgment was rendered, and shall allege that there is a just, or legal defense to the action, or some part thereof, such judgment shall be taken off and he shall be permitted to appear; any execution which may have been issued thereon to remain cautionary."

The judgment entered in this court, though, perhaps, not strictly a default judgment, was of that nature, but as

the Feinberg Furniture Co. was the plaintiff in the judgment below and the real plaintiff in this court, the petition filed by that corporation did not and could not allege that it had "a just or legal defense to the action, or some part thereof."

The petition is, therefore, dismissed.

SPEAKMAN, J., concurring:

I concur in the result reached by the majority of the Court, but I am unable to concur with its reasoning, as I am unwilling to agree that the authorities relied upon by the majority of the Court have any direct application to the present case.

No question has been raised concerning the jurisdiction of the Justice of the Peace of the cause of action or over the parties, the regularity of the proceeding before him or of the docketing of the appeal in this Court at the instance of the defendant below. It appears to me that the only question to be determined by this Court is "whether or not the respondent either had notice of or was charged with notice of the appeal," and that in the consideration of this question the rules of the common law have no application.

The remedy or procedure by appeal is of civil-law origin, and was introduced therefrom into courts of equity and admiralty.

It was entirely unknown to the common law. Consequently, the remedy by appeal in actions at law and in equity is purely of constitutional or statutory origin, and exists only when given by some constitutional or statutory provisions. 4 *C. J. S., Appeal and Error,* § 18.

"* * * an appeal is not the commencement of a new suit, * * * but is a continuation of the original suit or action or a step or proceeding in the original cause." 4 *C. J. S., Id.,* § 20.

"The office of an appeal has been said to be to remove the entire cause, and to bring the case up on its merits, * * * When given its original scope it is in substance or effect a new trial, or the award thereof; * * *" 4 *C. J. S., Id.,* § 21.

The right of appeal from judgments given by Justices of the Peace is regulated by *Chapter* 121 of the *Revised Code* of 1935.

*Section* 32 thereof (*Rev. Code* 1935, § 4521) gives the right of appeal in certain cases and it is not denied that under the authority of said *Section* the defendant below had a right of appeal from the judgment given by the Justice of the Peace.

*Section* 33 of said *Chapter* (*Rev. Code* 1935, § 4522) provides that

"Such appeal shall be allowed by the Justice at any time within fifteen days from the day of giving the judgment."

*Section* 34 of said *Chapter* (*Rev. Code* 1935, § 4523) provides that

"It shall be the duty of the appellant to have the appeal entered in the Superior Court of the County where the judgment was given, on or before the first day of the term next after the appeal; and for this purpose, to deliver a duly certified transcript of all the docket entries in the case to the Prothonotary, who shall file the same, * * * and shall issue a summons to the sheriff, * * * for summoning the respondent to appear and answer the appeal. * * *

"When the appeal is entered, the Court shall have jurisdiction and take cognizance thereof, and the pleadings and proceedings thereafter shall be as in causes commenced in the said Court."

From the above it is clearly apparant that an appeal from a judgment entered by Justices of the Peace is not the commencement of a new action. It is nothing more than a new trial of a cause in the Superior Court of a proceeding commenced before a Justice of the Peace, in which a judgment has been entered by the Justice of the Peace. The cause is tried as if commenced in the Superior Court. There is no change in the cause of action, the relative postion of the parties, or in the burden of the proof. On appeal there is no presumption in favor of the prevailing party below.

It of course must be conceded that where such an

appeal is taken the respondent should have notice thereof, and that where the manner of giving notice is provided by Statute the notice must be given in the manner so provided.

No specific provision is made by the Statutes of this State for the service of summons in appeal cases. If service is made upon the respondent in the manner provided by the Statute for the serving of original process for the commencement of actions, such service would be a proper service for the purpose of giving notice to the respondent of the filing of the appeal. Where, however, such service is not made because of the non-residence of the respondent, or otherwise, the right of the defendant below to prosecute his appeal should not be defeated.

. In *Dubree v. Pusey,* 5 *Harr.* 421, in considering an appeal from a judgment entered by a Justice of the Peace where the appellant had caused to be issued two citations and the Sheriff to each citation returned *"non est inventus"* this Court in holding two returns of *"non est inventus"* equivalent to a citation, said:

"The law secures the right of appeal to a defendant, which would be inoperative, unless there can be a mode of compelling the plaintiff to appear to the appeal."

The rule applied in the *Dubree Case* was approved by this Court in the *Sharpley's Will Case,* 5 *W. W. Harr.* (35 *Del.*) 76, 158 *A.* 709, in considering the effect of two returns of *"non est inventus"* to a citation in an appeal taken from the Register's Court. There this Court said:

"The method of taking the appeal seems to be a *casus omissus* of the statute.

. "The Courts of this state, however, were at an early date confronted, in appellate proceedings, with the same question here involved.

"In *Jeans v. Milford,* 3 *Harr.* 48, and *Dubree v. Pusey,* 5 *Harr.* 421, the Superior Court held that two returns of *'non est inventus'* in an appeal from a Justice of the Peace, were equivalent to service of a citation.

"In *Vandegrift v. Page*, 5 *Harr.* 439, the Court of Errors and Appeals held that two returns of *'non est inventus'* on a citation issued on a writ of error to the Superior Court were sufficient to enable the Court to review the judgment.

"In *Wiggin v. Massey*, 27 *Del.* (4 *Boyce*) 482, 90 *A.* 40, the Court applied the same practice to *certiorari* to a Justice of the Peace, holding that on failure of personal service the Court would hear and determine the exceptions on two returns of *non est inventus*.

"All of these cases recognize that while the right of appeal may be given by Constitution or statute, such right would become inoperative unless some such rule, as above indicated, was put in force, and consider a respondent practically within the jurisdiction of the Court, because of service or appearance to the proceedings below, and that two returns of *non est inventus* are equal to service (*Woolley, Del. Prac.*, 1424, 1425).

"We apply the same practice and accordingly hold, that in an appeal from a decision of the Register of Wills, two returns of *non est inventus* are equivalent to the service of a citation."

In the present case, upon the docketing of the appeal, a writ of summons sur appeal was issued returnable to the March Term, 1936, of this Court, directing the respondent to appear and answer the appeal, and was by the Sheriff of this County returned *"non est inventus;"* thereafter an *alias writ* was issued to the next ensuing term of this Court, being the May Term, 1936, likewise directing the respondent to appear and answer the appeal which was by the Sheriff of this County returned with the following endorsement thereon:

"Summoned H. Feinberg Furniture Co., a corporation of the State of Delaware, p. b. r., by serving the within writ and delivering a copy thereof personally to William Feinberg, Secretary and Treasurer of the said H. Feinberg Furniture Co., a corporation as aforesaid on the Eighth day of April, A. D. 1936. The President or other head officers of the said H. Feinberg Furniture Co., a corporation as aforesaid residing without the State of Delaware."

The respondent contends that the writ of *alias summons sur appeal* was not served upon William Feinberg, its Secretary and Treasurer, nor was any copy of the summons left with him, and it denies knowledge that the appeal was pending prior to the entry of the judgment against it in this Court.

The opinion of the majority of the Court is to the effect that the return of the Sheriff to the *alias writ* imports verity and cannot be contradicted. To what extent, if any, the return imports verity is not material for the consideration of this case. If it is not a false return, the respondent had due notice of the appeal. If on the other hand it is a false return, then a return according to the facts would of necessity have shown either a service on the respondent or it would have been returned by the Sheriff *"non est inventus"* and as a result the respondent would have had notice of the appeal by reason of the service, or he would have been charged with notice by reason of the two returns of *"non est inventus."*

The issuance and return of the original and *alias* summons were, for the purpose of giving notice to the respondent of the appeal, at least equal to two returns of *"non est inventus"* and were therefore sufficient to give notice to the respondent of the filing of the appeal.

The other reason advanced by the respondent as a ground for opening the judgment, namely, "that it has a just and legal cause of action against the appellant," cannot be considered, as it alone would not be sufficient to authorize the Court to act in the absence of some statutory authority.

The prayer of the petition of the respondent should be refused.